## GILCREASE v. HARTFORD ACCIDENT & INDEMNITY CO.

No. 4858.

Court of Civil Appeals of Texas. El Paso.

June 11, 1952.

Rehearing Denied July 9, 1952.

Robert Huasser, Lester Whipple, San Antonio, for appellant.

Virgil T. Seaberry, Turner & Seaberry, Eastland, for appellees.

McGILL, Justice.

This is a workman's compensation case. Appellant was the plaintiff-claimant, Richardson & Bass the employer, and appellee the defendant insurance carrier.

Trial was to a jury, and on answers to special issues the court rendered judgment that plaintiff recover nothing and that defendant recover of plaintiff its costs.

One of appellant's points is that the findings of the jury are in direct conflict with each other and that some of them are without evidence to support them.

First as to the asserted conflict: The injury for which plaintiff claimed compensation was alleged to have resulted from an infection in his leg caused by some bear grass or mesquite thorns, which he stuck in his leg while he was assisting in carrying a joint of pipe to repair a gas line on the lease of Richardson & Bass on August 28, 1944. He alleged that at the time of the injury he was working in the course of his employment for Richardson & Bass as a roustabout on their lease some seven or eight miles northeast of Kermit, Texas.

The jury found (1) That plaintiff was an employee of Richardson & Bass on August 28, 1944; (2) that on or about August 28, 1944, plaintiff sustained an injury to his legs by thorns or particles from bear grass, and/or mesquite; (3) that such injury was an accidental injury; (4) that they did not find that plaintiff sustained such injury in the course of his employment for Richardson & Bass; (5) that they did not find that the injuries had to do with or originated in the work, business or trade of Richardson & Bass; (6) that plaintiff suffered physical incapacity to labor or work "arising from the injury to his legs"; and (7) that they did not find that the injury sustained by plaintiff was a producing cause of such incapacity to labor or work.

If finding 7 had been an affirmative finding that the injury sustained by plaintiff to his legs on August 28, 1944, was not a producing cause of such incapacity to labor or work, we think there can be no question but that such finding would conflict with finding 6. It may be that since

finding 7 was negative rather than affirmative there is no conflict. However, although finding 7 is negative we think that in substance it does conflict with finding 6. We do not perceive how the incapacity could have arisen from the injury to plaintiff's legs and the injury to his legs not have been a producing cause of such incapacity. Therefore, in substance findings 6 and 7 are irreconcilable, and destroy each other, but they do not destroy other findings not in conflict with them and vitiate the verdict so that it cannot form the basis of the judgment if such other findings are sufficient to support the judgment. In such a situation the conflicting findings become immaterial. The Rule is thus stated in 41 Texas Jurisprudence, p. 1230, Section 343:

"It is not true in all cases of conflicting answers by a jury that a valid judgment may not be entered upon a verdict as a whole, but the conflict or contradiction in the answers must be with reference to material and controlling issues in the case, and, if the answers as a whole be such as to leave without contradiction all necessary material and controlling issues found by the jury in favor of one of the parties litigant, judgment may properly be entered upon the verdict, notwithstanding conflicts or contradictions as to issues not controlling, or immaterial."

citing Miller's Indemnity Underwriters v. Schrieber, Tex.Civ.App., 240 S.W. 963, wr. refused. Stated another way, the existence of an irreconcilable conflict between certain findings is immaterial if there remains at least one finding supporting the judgment which is not in conflict with any other. Aranda v. Texas & N. O. R. Co., Tex.Civ.App., 140 S.W.2d 236, loc.cit. 240 (12), and authorities there cited. (writ dismissed, judgment correct.); Railway Express Agency v. Robinson, Tex.Civ.App., 162 S.W.2d 984, w.r.w.m.; Porter v. Polis, Tex.Civ.App., 169 S.W.2d 216, w.r.w.m. In other words, the conflicting findings do not destroy each other except to the extent of the conflict. Fidelity & Casualty Co. v. McLaughlin, 134 Tex. 613, 135 S.W.2d 955, loc.cit. 958(9). Clearly, neither finding 6 nor 7 conflicts with any of the other findings. In his brief appellant states that findings 1, 2, 3 and 6 directly conflict with findings 4, 5 and 7, and particularly finding 6 conflicts with findings 4 and 5. He does not point out the conflict, but argues that the evidence was insufficient to support findings 4 and 5. We see no possible conflict between findings 4 and 5 and finding 6, nor any other findings except 6 and 7.

In order for plaintiff to recover it was necessary that he establish that he sustained the injury for which he claimed compensation in the course of his employment with Richardson & Bass, or in the words of the statute "that such injury had to do with or originated in the work, business or trade" of Richardson & Bass. By their answers to special issues 4 and 5 the jury refused to make either of these findings. Therefore, the verdict was sufficient to support the judgment rendered for defendant if findings 4 and 5 are supported by sufficient evidence. We think they are. Plaintiff testified that he was injured by the thorns at about nine o'clock on the morning of August 28, 1944, while he was helping to carry a pipe to fix a gas leak. Of course if these were the facts plaintiff was then acting within the course of his employment. Plaintiff also testified that during the lunch hour of the day he was injured by the thorns he pulled the thorns out of his leg in the presence of two members of the crew he was working with, Bugs Smith and Cap Lippincott, and talked to them about the accident. Each of these parties testified that he had no recollection of this occurrence. Cass Wills, the straw boss who plaintiff testified was helping him carry the pipe at the time of the injury, testified that he had no recollection of such injury or of plaintiff's having told him about it. While the jury found (2) that plaintiff sustained an injury to his legs on or about August 28, 1944, by thorns, they refused to find (4) that he sustained the injury on August 28 in the course of his employment, or (5) that it had to do with or originated in the work of Richardson & Bass. We have already said there is no conflict in these findings. We hold the evi-

dence was sufficient to warrant the jury's answers to special issues 4 and 5.

O. C. Stiles testified for defendant that he was production foreman for Richardson & Bass; that he had known plaintiff since around September 1944; that plaintiff had worked for Richardson & Bass twenty-three days; that one evening after working hours witness was returning home from town and plaintiff was on the road going to the house where he lived and witness picked him up in his car and gave him a ride about seven miles north of town and then let him out on the road that led to the house where he was living; that a road ran two miles east and one mile north to this house; that the next day he saw plaintiff and plaintiff told witness that after he let him out he started to a rig which was near the house, that it was dark and there was more than one rig in the field and he got lost; that he had left the road and taken a short cut to the house; that he got lost and didn't get home until around three in the morning and got stickers all in his legs. Witness could not fix the date he took plaintiff toward his house except that the next day plaintiff came to work and told him about getting lost and getting stickers in his legs, and witness could not fix this date except that it was before plaintiff quit working for Richardson & Bass on September 13, 1944. C. B. Stephen, a witness for defendant, testified that he had been with Richardson & Bass a little over seven years and was working for them in the fall of 1944; that he knew plaintiff when he worked for Richardson & Bass some time in the latter part of August and the first part of September 1944; that one morning while plaintiff was working for Richardson & Bass he was in the office and said he had gotten lost the night before and had gotten thorns in his leg and pulled up his trouser about to his knee and witness saw little specks that looked like pricks. Witness did not fix the date when this incident occurred other than that it was while plaintiff was working for Richardson & Bass. There was abundant evidence that there was bear grass and mesquite thorns on the lease of Richardson & Bass where plaintiff worked, and in the field where the witnesses testified plaintiff told them he got lost and got stickers in his legs.

The jury could believe or disbelieve all or any part of plaintiff's testimony. They could believe one part of it and disbelieve another part. They could believe his testimony that he sustained an accidental injury to his leg by thorns from bear grass or mesquite on or about August 28, 1944, and disbelieve his testimony that such injury was sustained while he was helping carry the pipe. In view of the testimony of Stiles and Stephen, plaintiff's testimony that he received the injury on August 28th is some evidence to support the inference that he did receive it on or about that date in the manner which Stiles and Stephen testified he told them he received it. The jury did not affirmatively find that plaintiff sustained the injury while lost in the field en route home but they refused to find that he did sustain it in the course of his employment, or that it had to do with or originated in the work of Richardson & Bass. To their minds the preponderance of the evidence may have been against such affirmative finding, and yet not sufficient to warrant a finding that he received the injury in the field. Since it was incumbent on plaintiff to procure an affirmative finding that the injury was sustained by him in the course of his employment, or that it had to do with or originated in the work of Richardson & Bass, he failed to prove his case.

Appellant presents points which complain of erroneous rulings of the trial court which he asserts prejudiced his case and require a reversal. The deposition of Dr. C. M. Cotham, plaintiff's chief medical witness, was taken on written direct and cross-interrogatories before a court reporter on January 27, 1951, and was sworn to by the doctor on February 23, 1951. After the reporter had transcribed the answers the doctor refused to sign the deposition before he corrected them. The correct answers were in many respects diametrically opposed to the answers first given. The doctor's explanation was that he had a heavy medical practice and the deposition was taken when he was very busy and worn

out and without his having an opportunity to consult hospital records; that he was confused as to the dates and gave the answers with reference to the date when he performed a skin graft for plaintiff on June 19, 1946, at which time he first concluded that plaintiff's injury from the thorns was serious; that prior to that time he had thought such injuries trivial and temporary and that the real injury to plaintiff's leg was from a taxicab accident which occurred about a year prior to the time he went to work for Richardson & Bass. In that accident the bones of plaintiff's left leg had been fractured and shattered at the same point where the sore or ulcer occurred; that he had first thought the failure of the sore to heal was due to the condition of the bones because of the prior accident. The court, over plaintiff's objection, required plaintiff to read to the jury the first answers given by the doctor and refused to permit him to read the corrected answers unless he did so. Under this ruling the first answers, the corrected answers and the explanation by the doctor were read. Another ruling of which appellant complains is that the court refused to permit him to testify as to what the doctors told him about his injuries, i. e., that they thought the injury from the thorns was trivial and temporary and would soon heal, and that the real trouble was because of the prior accident.

We think the court erred in both rulings complained of. Rule 209, Texas Rules of Civil Procedure, expressly provides that:

"When the testimony is fully transcribed the deposition shall be submitted to the witness for examination and shall be read to or by him, unless such examination and reading are waived by the witness and by the parties. Any changes in form or substance which the witness desires to make shall be entered upon the deposition by the officer with a statement of the reasons given by the witness for making them. The deposition shall then be signed by the witness * * *."

Any party has a right to offer any part of a deposition that he desires to offer if it is admissible under the rules of evidence.

He also has a right not to offer any part of such deposition. By compelling plaintiff to offer a portion of the deposition which he did not desire to offer in order to obtain the right to offer a portion thereof which he did desire to offer, the court unduly interfered with his legal right. Plaintiff should have been permitted to offer the corrected answers and defendant could then have offered the original answers for impeachment purposes or as original evidence if he so desired, and plaintiff could then have offered the explanation. The procedure followed we think did not unnecessarily confuse the jury as contended by appellant, but it did deprive plaintiff of a legal right. We also think plaintiff's testimony as to what the doctors told him as to the injury from the thorns being trivial and temporary and the failure of his leg to heal being due to his prior accident was admissible, and that the court erred in excluding it. Plaintiff alleged:

"Plaintiff alleges that although actual notice of the injury was given by him to Richardson & Bass, their agents, servants, and employees, immediately after he received the injury, to-wit, on or about the 28th or 29th day of August, 1944. * * * that formal written notice was given and formal claim filed with the Industrial Accident Board on or about the 19th day of June, 1946, and in this connection plaintiff alleges that during all of the time between the receipt of the injury and the giving of formal notice and filing formal claim with the Industrial Accident Board that he thought the injury would immediately heal and was continually expecting it to heal without any permanent results. * * * That during all of the time up until the giving of formal notice and filing formal claim, that plaintiff thought the injury complained of herein was a result and was caused by the previous condition of his legs. * * * After the receipt of the injury herein complained of and up until the time formal notice was given and claim was filed with the Board of Insurance Com-

missioners, the doctors who treated him for the injuries here complained of told him that the sores on his legs caused by the bear grass and/or mesquite thorns were trivial and would immediately heal, and continued telling him they would immediately heal and that such sores were trivial up until the time of giving of notice and filing of claim as herein alleged. Also, said doctors told him that the sores were caused by his previous condition. That he relied and believed what the doctors told him and believed that the sores were trivial and would momentarily heal, and were caused by said previous condition."

These allegations were unquestionably for the purpose of showing good cause for plaintiff's not having given formal notice and filed his claim within the time allowed by law. They had to do with the state of plaintiff's mind. What the doctors told him, whether true or false, was certainly relevant as to the state of his mind and was admissible even though hearsay. Texas Law of Evidence, McCormick & Ray, pp. 463–4, Sec. 371. However, in our opinion both of these errors are important only insofar as the question of good cause was involved. No issue on good cause was requested or submitted and therefore the errors were harmless. We do not agree with appellant's contention that the doctors' opinion that plaintiff's legs were weakened by the prior accident was relevant to the issue as to course of employment, such contention being that if plaintiff thought his legs were weakened by the prior accident, it is improbable that he would have attempted to walk home through the field. Such an inference is too remote to have any probative force or material bearing on the question of course of employment.

■ The statement of defendant's attorney in his argument that the jury could take the deposition of Dr. Cotham into the jury room, though erroneous was harmless, since the deposition was not taken into the jury room or requested by the jury. Also the statement by defendant's counsel in the presence of the jury that the answers of Dr. Cotham had been "changed" rather than "corrected" is of no importance.

We find no reversible error and the judgment is affirmed.

PRICE, C. J., did not participate in the disposition of the above case.